J. Daniel Bariault, WSBA No. 12953
dan@businessadvocatelaw.com
Business Advocate Law PLLC
1700 Seventh Avenue, Suite 2100, PMB 295
Seattle, WA 98101
(206)369-3912 | (866)941-4967 Fax

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ERNEST SIMMONS, ROBIN SIMMONS, KORY SIMMONS, individually and as general partners of SIMMONS & SON HAULING, a Washington general Partnership, S.I. LLC, a Washington limited liability company, and N.V.L.R. & M. LLC, an Oregon limited liability company, qualified to do business in the State of Washington, )))))))))) | |
| Plaintiffs, )) | NO. CV-12-3046-LRS |
| vs. )) | COMPLAINT |
| WASHINGTON STATE DEPARTMENT OF NATURAL RESOURCES, DAVE NORMAN, JOHN BROMLEY, ELAINE POWELL, CHRIS JOHNSON, DAVID WILLIAMSON, d/b/a HORSESHOE BEND QUARRY, INC., and JOHN DOE'S 1 - 100, ))))))))) | |
| Defendants. )) | |

COMPLAINT - 1

Plaintiffs, by and through their attorney, J. Daniel Bariault, for their Complaint state as follows:

## I.    INTRODUCTION

This action arises under the Fifth and Fourteenth Amendments to the United States Constitution; under federal law, specifically, 42 U.S.C. §1983 and §1988; for state based remedies arising from violation thereof, 15 U.S.C. §§1 and 14, and prospectively, various governmental tort liability statutes subject to the Washington State Tort Claims Act.

Plaintiffs Ernie Simmons, Robin Simmons, and Kory Simmons are general partners in Simmons & Son Hauling, a Washington general partnership that operated a lawful surface mining operation that was inundated by a massive landslide in 2009. Subsequently, the Washington State Department of Natural Resources ("DNR") issued an Emergency Order to Suspend Surface Mining (hereinafter the "Order"), without legislative authority and has refused to withdraw or modify the Order to permit mining. The Order remains in effect to this day under threat of severe financial penalties should reclamation or mining operations be reinitiated. DNR personnel have continuously interfered with Plaintiffs' property interests by preventing mining operations, by interfering with Plaintiffs' licensing or permitting interests with other regulators, communicating improper and incorrect information to third parties having

COMPLAINT - 2

a commercial relationship with Plaintiffs, and continue to doing so on a regular basis. Defendants' actions were outside of the scope of their authority and under color of state law. Defendants' actions have caused serious financial injury by depriving Plaintiffs of their lawful property interests. Plaintiffs' financial injury is continuous and ongoing.

## II.    JURISDICTION AND VENUE

1.  This court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§1331, and 1343(a)(1),(3), and (4); 42 U.S.C. §1983 and §1988; the Fifth and Fourteenth Amendments of the United States Constitution, and 15 U.S.C. §§1 and 14. Prospectively, supplemental jurisdiction is had by 28 U.S.C. §1367. Venue is founded in this court pursuant to 28 U.S.C. §1391, as the property and acts complained of occurred in this district.

## III.    PARTIES

A. PLAINTIFFS:

2.  ERNIE SIMMONS is a citizen and resident of Naches, Washington.

3.  ROBIN SIMMONS is a citizen and resident of Selah, Washington.

4.  KORY SIMMONS is a citizen and resident of Naches, Washington.

5.  SIMMONS & SONS HAULING is a Washington general partnership ("Simmons").

COMPLAINT - 3

6.  S.I. LLC is a Washington state limited liability company.

7.  N.V.L.R. & M. LLC, an Oregon limited  liability company qualified as a foreign limited liability company to do business in the State of Washington and the successor in interest to the property of Steve and Mary Smith.

B. DEFENDANTS:

8.  The WASHINGTON STATE DEPARTMENT OF NATURAL RESOURCES is a department of the State of Washington.

9.  DAVE NORMAN, acting in his individual capacity, is an employee of the Washington State Department of Natural Resources.

10. JOHN BROMLEY, acting in his individual capacity, is an employee of DNR.

11. ELAINE POWELL, acting in her individual, is an employee of DNR.

12. CHRIS JOHNSON, acting in his individual capacity, is an employee of DNR.

13. DAVID WILLIAMSON, a resident of the State of Washington, d/b/a HORSESHOE BEND QUARRY, INC. (no incorporation record found).

14. JOHN DOES 1 – 100, on information and belief, were acting in various capacities.

IV.    FACTS

COMPLAINT - 4

15. Beginning in 1994, Plaintiffs Ernie Simmons, Robin Simmons, and Kory Simmons operated a lawful surface mining operation pursuant to a permit to conduct the same issued by the United States Department of Labor, Mine Safety and Health Administration ("MSHA"), a permit to conduct surface mining issued by Yakima County, State of Washington ("Yakima County"), and a reclamation permit ("Reclamation Permit") and plan issued and approved by the Washington State Department of Natural Resources ("DNR"). All permits and approval of the plan are required as a condition to the conduct of surface mining.

16. A Reclamation Permit was issued to Plaintiff Simmons in 1994.

17. An amended permit application together with an amended reclamation plan was filed in 2005 and the application for the renewal thereof accepted by DNR in 2008.

18. DNR through its personnel noticed that the talus slope below and contiguous to the headscarp on DNR property was separating from and slipping down the headscarp in a manner that was likely to directly affect Simmons' property.

19. The movement of the talus material indicated that the talus slope had become overloaded from sloughing along the headscarp and was in danger of activating a landslide.

COMPLAINT - 5

20. DNR, without authority, shifted monitoring and attendant public safety responsibility to Simmons, private parties, as a condition to the renewal of Simmons' reclamation permit. At DNR's insistence, Simmons was required to hire a geologist and geotechnical engineering firm to produce a geotechnical report on the movement along the headscarp in the area north and east of the area subject to Simmons' reclamation permit.

21. Plaintiffs' geologist and geotechnical engineer produced a geotechnical report and delivered the same to DNR in January, 2007.

22. The report confirmed DNR's knowledge that the talus slope upslope from the mining pit was slipping and separating from the headscarp.

23. Simmons consented to monitoring and an annual report thereon to DNR in July, 2008, as a condition to the approval of its reclamation permit extension.

24. On October 11, 2009, a massive landslide (the "Nile Slide") originating from DNR property inundated the Simmons' mining operation, traversed a state highway, and blocked a significant portion of the Naches River.

25. The Nile Slide severely damaged several private residences sited near the affected talus slope, burying entirely one home and inundating most of the Simmons' mine site with talus material activated thereby.

COMPLAINT - 6

26. Flooding from the blockage of the Naches River by the Nile Slide significantly damaged four other homes. Fortunately, there was no loss of life.

27. The Nile slide surficially activated 80 acres of an old, previously dormant talus slope. It emanated entirely from property owned by or under trust to DNR.

28. Initially, DNR officials pointed the finger at the Simmons mining operation as the likely cause of the slide, notwithstanding the fact that DNR was clearly on actual notice movement at the headscarp on its property, that such movement was associated with overloading of the talus slope along the headscarp from sloughing, and that the movement indicated increased likelihood that the talus slope would be activated as a slide.

29. The Nile Slide, but not its time of occurrence or scope, was predictable.

30. Subsequent analysis and studies showed that Simmons' mining operations were not implicated in the Nile Slide and that the Nile Slide was a natural but predictable event associated with overloading at the headscarp.

31. After the Nile Slide released the potential energy in the driving force from the overloaded slope along the headscarp, the Nile Slide's potential energy was spent and the resulting talus slope was in a stable repose, DNR belatedly, but without authority, its destructive power and the slide material lay in stable repose, DNR belatedly, but without authority, took an interest in the "safety" of the slide area.

COMPLAINT - 7

32. Upon information and belief, DNR's interest was associated with its goal to deflect blame from itself as landowner of the headscarp for negligently failing to take action to remove the overload along the headscarp.

33. On November 4, 2009, a female appeared at the residence of Ernie and Robin Simmons and indicated to Robin Simmons that she had something for her. She refused to tell Robin Simmons her name and indicated that she did not know the contents of the package she was presenting. The person has subsequently been identified as Defendant Elaine Powell.

34. The package contained a document entitled "Emergency Order To Suspend Surface Mining" (the "Order").

35. The Order was based on suppositions, inaccuracies, and conclusions that provided no factual or legal basis for the Order, and clearly exceeded the legislative authority granted to DNR.

36. DNR knew it lacked the authority to issue the Order and it is reasonable to assume they did so to provide political cover for the Nile Slide and resulting destruction.

37. As a result of Defendants' wrongful actions directed at the Simmons, to this day, many people believe Simmons caused the Nile Slide.

COMPLAINT - 8

38. DNR's subsequent interpretation of the provisions of the Washington Surface Mining Act, Chapter 78.44 RCW (the "Act") upon which it based its authority was patently in conflict with the plain language and construction of the specified provisions, and the role DNR plays in the state and federal hierarchy and under the Act.

39. The Order was supported by threat of fines sufficient to permanently close down Plaintiffs' business operations.

40. DNR is the trustee of the property at which the talus slope that was the source of the slide begins.

41. DNR had prior and continuing notice that a potentially dangerous condition existed.

42. DNR was negligent by failing to remove material along the headscarp on its trust property to reduce the risk of a massive slide such as the Nile Slide that actually occurred.

43. The Nile Slide did in fact occur. It resulted in the Simmons' mining operation being inundated, an injury for which DNR took no responsibility. DNR, in fact, denied responsibility.

COMPLAINT - 9

Business Advocate Law PLLC
1700 Seventh Avenue
Suite 2100, PMB 295
Seattle, WA 98101
(206) 369-3912 / (866) 941-4967 Fax

44. DNR has never filed a claim or stated publically that Simmons violated the law or their permit or that their mining operations caused the slide. It proceeded through innuendo based on and through the issuance of the illegal Order.

45. Plaintiffs had the opportunity to recover their property losses had they been allowed to conduct their operations consistent with the Reclamation Plan and doing so would reduce the risk, if any, of future movement of the talus slope resulting from the Nile Slide.

46. Reclamation permits are issued as of a date and have terms.

47. During their term they are binding.

48. Reclamation plans accompany reclamation permits.

49. The permittee is allowed to modify a reclamation plan at any time as long as the modified reclamation plan meets the protections, mitigations, and reclamation goals of RCW 78.44.091, RCW 78.44.131, and RCW 78.44.141.

50. The DNR may only require a permit holder to modify a reclamation plan if it determines the previously issued plan has not been modified in the preceding ten years or that the permit holder has violated or is not substantially in compliance with the previously approved reclamation plan.

COMPLAINT - 10

Business Advocate Law PLLC
1700 Seventh Avenue
Suite 2100, PMB 295
Seattle, WA 98101
(206) 369-3912 / (866) 941-4967 Fax

51. Here, the facts show that Simmons modified reclamation permit with associated modified reclamation plan approved by DNR in 2008 had been issued within the last ten years.

52. DNR has never identified actions of Petitioner that are in violation of the modified reclamation plan or that are not in substantial compliance therewith.

53. Rather, DNR, while citing no authority, claims that the change in topography resulting from the rock material inundating the permitted mine site renders the modified permit and reclamation plan void.

54. Notwithstanding the changes in topography and elevation resulting from the Nile Slide, the substantive reclamation undertakings of the Reclamation Plan remain fully performable.

55. Changes to topography resulting from slides or from other sources provide no statutory basis under RCW 78.44.151 for DNR to require a new modified permit application or a new modified reclamation plan.

56. Based on the facts, DNR had no authority to issue an Emergency Order and has no authority to continue the same.

57. DNR and its representatives have contorted the statutory language and scheme to cover their knee-jerk reaction in issuing the Order without authority.

COMPLAINT - 11

58. In 2011, DNR sought amendments to RCW 78.44.200 to give DNR the authority to take the very form of action taken against Simmons. The amendments sought, but not passed, are a clear indication that DNR and its personnel knew they lacked the authority to issue the Order.

59. Upon information and belief, DNR was looking for a scapegoat to hide its negligent management of the headscarp. Simmons was a convenient target.

60. Lifting the Order would be tantamount to admitting an error by DNR and its personnel, something it and they are unwilling to concede.

61. DNR and its personnel, including one or more of the other named Defendants who are DNR personnel, has pressured other governmental agencies to support their violation of Plaintiffs' property rights to protect DNR from claims by Plaintiffs or other third parties, to the detriment and injury of Plaintiffs.

62. As long as the property described in the Reclamation Permit and associated Reclamation Plan may be reclaimed to the desired two to one slope, there is no legal basis for DNR to modify the existing Reclamation Plan.

63. Reference is made to DNR's mission in regulating surface mines. It is granted authority to regulate the reclamation of the site; it does not regulate the safety of the site during mining operations.

COMPLAINT - 12

64. The local governmental jurisdictions, in the present case, Yakima County, are granted exclusive authority under the Act to regulate mining operations.

65. Issues relative to the safety of personnel working at the mine site are within the unique jurisdiction of MSHA, not DNR.

66. Such authority is limited to protecting personnel at the mine site. It does not include protecting the general public.

67. Public safety from mining operations is entrusted to local government, and Yakima County has taken no action against Simmons on the Nile Slide.

68. Simmons' engineer, PLSA, through its representatives has visited the site since the slide. Through its engineer, Mr. Brad Card, it has written a letter that has been sent to the Washington State Attorney General for DNR with additional materials confirming that the slide area is currently in repose and that mining activities may be conducted thereon.

69. The letter was based on discussions with personnel of the Washington State Department of Transportation ("DOT") which has done extensive testing at the slide site in anticipation of rebuilding the state highway.

70. The letter was also based on direct observation by Mr. Card.

71. Additionally, PLSA and Mr. Card prepared the 2005 modified reclamation plan for the mine site and conducted the monitoring of the loose talus slope that slide

COMPLAINT - 13

on October 11, 2009 in response to DNR's conditions to the modified reclamation plan.

72. Since the slide, Mr. Card has received from the DOT the map data that it has collected from continuously monitoring the result of the slide since October 11, 2009.

73. The map data indicates that the slide is in repose and that there has been no further movement thereof.

74. As of the date of this filing, DOT has been actively working for several weeks at the site, building roads and using heavy equipment similar to that of a mining operation.

75. On information and belief, DNR attempted to impede DOT's operations as they would weaken DNR's position that it had no authority to issue or continue the Order or that Plaintiffs were damaged by the Order.

76. The activities that Petitioner would conduct or could legally conduct on the site under the authority of MSHA are less extensive and intrusive than those of DOT.

77. Plaintiffs acknowledge that RCW 78.44.200 provides that DNR may take emergency action under certain conditions. Those conditions are that Simmons was in violation of or in material noncompliance with the Act, regulations under the Act, the Reclamation Permit, or the Reclamation Plan, and that such violation or material

COMPLAINT - 14

Business Advocate Law PLLC
1700 Seventh Avenue
Suite 2100, PMB 295
Seattle, WA 98101
(206) 369-3912 / (866) 941-4967 Fax

noncompliance created a material and emergent risk to public health, safety, or the environment. A natural disaster is not a condition giving rise to the right to issue the Order.

78. Those conditions have not been met in this case.

79. DNR has never monitored the site.

80. DNR has never made any physical study on the site during the relevant time period.

81. DNR's position is in conflict with DOT's study and report.

82. DNR has no factual or legal basis to support the Order.

83. DNR has no factual or legal basis to support its demand that Simmons provide a new reclamation plan as a condition precedent to the possibility of resuming mining operations.

84. DNR's authority flows from the Reclamation Plan in as much it is the contractual equivalent of the terms and conditions entered into between DNR and the mine operator. DNR's authority is directed at violations of the plan, including the authority to issue an emergency order to suspend surface mining if activities engaged in by the operator are in violation of the plan. It does not include topographical changes to the terrain not originating from the acts of the mine operator.

COMPLAINT - 15

Business Advocate Law PLLC
1700 Seventh Avenue
Suite 2100, PMB 295
Seattle, WA 98101
(206) 369-3912 / (866) 941-4967 Fax

85. In fact, DNR cannot point to a single violation of the Simmons Reclamation Plan that would provide a basis for an emergency order to suspend surface mining pursuant to RCW 78.44.200.

86. Upon information and belief, these actions have been taken in bad faith to cover up DNR's negligence and failure to take primary responsibility for monitoring its trust property from which the slide emanated and its wrongful use of Simmons as a scapegoat in the Nile Slide and subsequent destruction of the highway and other private property.

87. One of the conditions DNR attempts to impose is the drilling of two deep boreholes for monitoring when DOT thereafter drilled those two boreholes and reported thereon and has already performed such a study and has concluded the slide field is now stable. The interim agreement between DNR and Simmons continuing a companion administrative proceeding does not require Simmons to drill the boreholes. Rather, more than one hole must be drilled in what has been referred to as domain D as identified in the DOT geotechnical report issued in April, 2010. In fact, after the interim agreement was entered, DOT drilled and produced the requisite geotechnical report on two such boreholes in domain D in which the property subject to the Reclamation Permit is located, on in the floor of such property and on to the southwest thereof.  DOT's actions took place after the interim order was entered and

COMPLAINT - 16

before January 1, 2011, and were timely within the meaning of the interim agreement. Based thereon, Simmons is in compliance with the interim agreement.

88. DNR has held Plaintiffs hostage by continuing to require additional testing. On information and belief, no amount of additional testing will be adequate in the view of DNR to persuade it to withdraw the illegal Order and allow Simmons to reopen the pit.

99. DNR is aware of the cost of such monitoring and the request is without reason or basis and done to impede and make economically impossible Plaintiffs' attempt to resume mining operation.

90. If DNR withdrew its Order, it would admit against its interest that the mining operation was not the cause of the Nile Slide or that it acted illegally in issuing and continuing the Order.

91. Upon information and belief, statements made to third parties by DNR's representatives demonstrate that the interim agreement was entered into by DNR in bad faith. DNR never intended to allow mining operations to resume under any conditions.

92. As a direct consequence of DNR's actions, Simmons was not permitted to mine, process, or sell material to DOT to divert the Naches River in the period from November, 2009 to January, 2010, or to any other party.

COMPLAINT - 17

Business Advocate Law PLLC
1700 Seventh Avenue
Suite 2100, PMB 295
Seattle, WA 98101
(206) 369-3912 / (866) 941-4967 Fax

93. Simmons was the low cost source for material that would be useable in the DOT project rerouting the Naches River after the Nile Slide because no haul mileage was required.

94. Upon information and belief, DOT intended to use material from the Simmons pit but was persuaded not to do so by DNR and its personnel who are Defendants herein.

95. The haul cost to the next closest quarry at Horseshoe Bend was estimated at $4.00 per yard.

96. More than 600,000 yards of material were used in the project.

97. Simmons & Son Hauling would have earned, net of cost in excess of $3,000,000 by supplying the project.

98. The contract was awarded to competitor and Defendant Williamson.

99. Williamson's pit is located more than six miles by road from the project site.

100. On information and belief, the Williamson and his agent have been actively monitoring Simmons' operations at the site and reporting the same to DNR.

101. Every day that the Order is in force results in Plaintiffs incurring thousands of dollars of revenue losses.

COMPLAINT - 18

Business Advocate Law PLLC
1700 Seventh Avenue
Suite 2100, PMB 295
Seattle, WA 98101
(206) 369-3912 / (866) 941-4967 Fax

102. The unlawful Order has also resulted in unnecessarily higher costs to state and federal taxpayers.

109. DOT developed plans to control the risk of slide activation in an area outside but contiguous to Simmons' surface mining operations.

104. As part of those plans, DOT initially proposed to purchase 11 acres of the Simmons' property to build a buttress to protect the future roadway.

105. The area was contiguous to the Nile Slide but not affected by it. DOT planned to remove upslope material toward the headscarp to reduce its driving force and use that material to build the buttress.

106. The plan identified the methodology that DNR should have employed to reduce the risk of a slide along the headscarp prior to the Nile Slide.

107. DOT commissioned an appraisal.

108. Using proper methods of appraising both the rock resource and the property, but improperly discounting the royalty, the report valued the 11 acres in excess of $70,000.

109. Upon information and belief, DNR learned of the appraisal and intervened with DOT. In response, DOT, in conflict with its own appraisal and in violation of its obligation to Simmons, reduced the offer to $11,000.

COMPLAINT - 19

110. When Simmons refused, DOT modified its plan and eliminated the removal of upslope material. Apparently, DOT concluded that slide control was unnecessary and that the slope was sufficiently stable to render road building at the toe thereof safe without removing the overload toward the headscarp and the driving force associated therewith.

111. DOT has failed to justify its change of plan in a modification to its prior SEPA filing or to quantify the effect of the change on the safety to the public resulting from such modification..

112. In November, 2009, MSHA issued an order allowing limited mining operations.

113. Upon information and belief, when DNR became aware of MSHA issuing the permit there was a heated discussion between the two agencies and Defendants persuaded MSHA to revoke it.

114. MSHA has represented that they would not object to resumption of mining operations.

115. Subsequently, MSHA changed its position and agreed to limit any such activities.

116. Eventually, MSHA did permit the construction of a pioneer road system that included elements of surface mining.

COMPLAINT - 20

117. The modified MSHA permit is based on a plan that includes removal of material on the top of the slide, exactly what Simmons has continued to propose.

118. DNR's active interference without reasonable cause has resulted in excessive damages to Plaintiffs.

119. Such interference is ongoing and damages accrue on a daily basis.

120. An administrative appeal ("Administrative Appeal") was filed on behalf of Plaintiff Simmons on December 3, 2009 and is ongoing at this time. OAH No. 2009-DNR. Q003.

121. On July 16, 2010, Simmons entered into an interim settlement agreement ("Interim Agreement") with DNR in regards to continuing the Administrative Appeal.

122. The Interim Agreement was a good faith effort by the Simmons to resolve their differences with DNR through the use of geotechnical information developed by DOT showing that the talus slope from the Nile Slide was sufficiently stable to permit resumption of surface mining operations. The Interim Agreement did not concede the legality of DNR's actions or any factual basis thereof even if the actions were legal.

123. Through further drilling and reporting activities of DOT, Simmons has substantially complied with the conditions of the Interim Agreement.

COMPLAINT - 21

124. The DNR and other Defendants, some of whom are DNR personnel, continue to impose conditions and requirements intended to make reopening the mine impossible, consistent with statements made by Defendants to third parties.

125. Plaintiff S.I. LLC has been damaged by its inability to receive the benefit of a contract entered in to with Simmons for the acquisition and sale of a certain quantify of processed talus material.

126. Plaintiff N.V.L.R. & M. LLC has been damaged by not being able to move forward on a contract with Simmons to carry out mitigation services.

127. Plaintiff N.V.L.R. & M. LLC is the successor in interest by quit claim of the property previously held by Steve and Mary Smith.

128. Plaintiff N.V.L.R. & M. LLC has been damaged by the Nile Slide and the complete impairment of the property's commercial value as a direct result therefrom and from the actions of DNR and its personnel.


V.    CAUSES OF ACTION

COUNT I

Violation of Civil Rights Pursuant to Title 42 U.S.C. §1983

(General Allegations)

COMPLAINT - 22

129. Plaintiffs reallege and incorporate herein by reference the allegations set forth in paragraphs 15 through 128 of this Complaint.

130. Defendants authority is limited and is implemented in concert with other federal, state, and local authorities. RCW 78.44.011 and RCW 78.44.020.

131. Defendants authority to issue stop work orders is set forth in RCW 78.44.200.

132. Defendants exceeded the limited authority granted DNR pursuant to state statute.

133. Defendants took emergency action without a proper basis in law or fact and without consideration for the damage that said action may have on Plaintiffs.

134. DNR acted without legislative authority to protect the public incident to surface mining and even where public safety is implicated, it has authority only if there is a violation and the violation gives rise to an emergency.

135. In 2011, DNR sought amendments to RCW 78.44.200 to give DNR the authority to take the very form of action taken against Simmons. If DNR had the authority to act the amendments sought would be unnecessary.

136. The violation must be of a reclamation related matter, a violation of the Act, its regulations, the reclamation permit or the reclamation plan.

COMPLAINT - 23

Business Advocate Law PLLC
1700 Seventh Avenue
Suite 2100, PMB 295
Seattle, WA 98101
(206) 369-3912 / (866) 941-4967 Fax

137. A violation of a mining plan, what is submitted to the County on an SM-6, is not implicated and does not give DNR statutory authority to issue an emergency order.

138. Defendants actions were undertaken under color of state law.


### COUNT II

Violation of Civil Rights Pursuant to Title 42 U.S.C. §1983

(Deprivation of Property Without Due Process of Law)

139. Plaintiffs reallege and incorporate herein by reference the allegations set forth in paragraphs 15 through 138 of this Complaint.

140. By the actions and omissions described above, Defendants violated 42 U.S.C. §1983, depriving Plaintiffs of clearly established and well settled property rights protected by the Fifth and Fourteenth Amendments to the United State Constitution.

141. Defendants issued an Emergency Stop Work Order on November 4, 2009.

142. Defendants issued the order without a factual basis.

143. Defendants issued the order based on statements the Defendants knew or should have known were false.

COMPLAINT - 24

144. Defendants issued the order without legal authority to do so, beyond the clear scope of the statutory intent and language, thereby causing injury to Plaintiffs property rights.

145. Defendants have made it patently clear that it is their intent to never allow the Simmons mining operation to open, having made indisputable comment to that effect.

146. Damages are both historical and ongoing, and shall be proven at trial.

147. All actions taken by Defendants Powell, Bromley, and John Does 1 – 100 were under color of law were in both their individual and official capacities.

COUNT III

Violation of Civil Rights Pursuant to Title 42 U.S.C. §1983

(Deprivation of Property Without Due Process of Law)

148. Plaintiffs reallege and incorporate herein by reference the allegations set forth in paragraphs 15 through 147 of this Complaint.

149. Defendants Powell, Bromley, and John Does 1 – 100 interfered with the statutory review of other regulators to deprive Plaintiffs of their valid property rights.

150. MSHA issued a permit to Simmons on November, 14, 2012 to resume limited mining operations.

Business Advocate Law PLLC
1700 Seventh Avenue
Suite 2100, PMB 295
Seattle, WA 98101
(206) 369-3912 / (866) 941-4967 Fax

151. Upon information and belief, when DNR learned of the issuance of said permit, DNR contacted MSHA and protested issuing the same.

152. Thereafter, MSHA withdrew the permit.

153. On January 7, 2010, MSHA modified the permit to allow construction of a pioneer road system and DNR consented to the same.

154. Plaintiffs have begun to construct the permitted pioneer road system.

155. Defendants have threatened Plaintiffs for constructing the roadways, characterizing them as a violation of the Order, a characterization on its face without merit.

156. DOT considered purchasing a portion of the Simmons' property inundated by the Nile Slide.

157. DOT proposed an initial price for said property based on an appraisal that it commissioned for that purpose.

158. Upon information and belief, when DNR learned of the potential transaction, DNR contacted DOT and argued that the price was too high.

159. Upon information and belief, DNR knew that the true fair market value of the property could significantly multiply Plaintiffs potential damages claim against Defendants.

Business Advocate Law PLLC
1700 Seventh Avenue
Suite 2100, PMB 295
Seattle, WA 98101
(206) 369-3912 / (866) 941-4967 Fax

160. Accordingly, the price was dramatically reduced and ultimately the transaction was never consummated.

161. Upon information and belief, DNR has engaged in such conduct and interference to deprive Plaintiffs of their valid property rights.

162. Upon information and belief, DNR continues to pressure third party regulators to support DNR's improper position to the detriment of Plaintiffs' property rights.

163. These actions have caused great injury to Plaintiffs in the form of lost revenue that continue to this day, the amount of which shall be proven at trial.

164. These actions have an indirect effect of price fixing and anti-competitive behavior.

165. All actions taken by Defendants Powell, Bromley, and John Does 1 – 100 were under color of law and were in both their individual and official capacities.

COUNT IV

Inverse Condemnation By Physical Inundation

(Article 1, §16, Washington State Constitution)

166. Plaintiffs reallege and incorporate herein by reference the allegations set forth in paragraphs 15 through 165 of this Complaint.

167. Defendant's property collapsed or slid onto Plaintiffs' property.

COMPLAINT - 27

Business Advocate Law PLLC
1700 Seventh Avenue
Suite 2100, PMB 295
Seattle, WA 98101
(206) 369-3912 / (866) 941-4967 Fax

168. As a result of the DNR's property collapsing and inundating Plaintiffs' property, Plaintiffs' property has been effectively condemned inversely by irrevocably impairing the property's commercial value.

169. Plaintiffs are entitled to just compensation for the government taking.

COUNT V

Inverse Condemnation by Regulatory Action

(Article 1, §16, Washington State Constitution)

170. Plaintiffs reallege and incorporate herein by reference the allegations set forth in paragraphs 15 through 169 of this Complaint.

171. Defendant's property collapsed or slid onto Simmons' property.

172. Upon information and belief, Defendants, in response to the slide and to deflect fault, issued the Order resulting in the shutdown of the Simmons' mining operations.

173. Subsequently, Defendants DNR and its personnel have made clear by their actions and statements that they never intend to allow the reopening of the Simmons' mining operations or any other similar operation on Plaintiffs' property.

174. The Order and unwillingness to work with Plaintiffs in good faith have caused Plaintiffs' property to be condemned inversely.

175. Plaintiffs are entitled to just compensation for the government taking.

COMPLAINT - 28

Business Advocate Law PLLC
1700 Seventh Avenue
Suite 2100, PMB 295
Seattle, WA 98101
(206) 369-3912 / (866) 941-4967 Fax