UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

ERNEST SIMMONS, ROBIN SIMMONS, KORY SIMMONS, individually and as general partners of SIMMONS & SON HAULING, a Washington general Partnership, S.I. LLC, a Washington limited liability company, and N.V.L.R. & M. LLC, an Oregon limited liability company, qualified to do business in the State of Washington,

Plaintiffs,

v.

WASHINGTON STATE DEPARTMENT OF NATURAL RESOURCES, DAVE NORMAN, JOHN BROMLEY, ELAINE POWELL, CHRIS JOHNSON, and DAVID WILLIAMSON, d/b/a HORSESHOE BEND QUARRY, INC.,

Defendants.

NO. CV-12-3046-EFS

**ORDER DENYING PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

Before the Court, without oral argument, is Plaintiffs Ernest Simmons, Robins Simmons, Kory Simmons, Simmons & Son Hauling, S.I. LLC ("Simmons"), and N.V.L.R. & M. LLC's (collectively, "Plaintiffs") Motion for Preliminary Injunction. ECF No. 9. Defendants Washington State Department of Natural Resources (DNR), Dave Norman, John Bromley, Elaine Powell, Chris Johnson, and David Williamson oppose the motion, raising jurisdiction and merits-based arguments in opposition. After reviewing the parties' filings and applicable authority, the Court is fully

informed. For the reasons set forth below, the Court denies Plaintiffs' motion: DNR and its officials are not barred from enforcing the DNR Emergency Order at this time. Further, the parties are to file briefing addressing whether this lawsuit should be dismissed due to Eleventh Amendment immunity.

**A. Background**

**1. Documents Considered**

When considering a preliminary-injunction motion, a district court is to determine the facts based on the submitted evidence, rather than merely rely on the pleadings. *See* Fed. R. Civ. P. 65(a)(2) ("evidence that is received on the motion") & (b)(1)(a) ("specific facts in an affidavit or a verified complaint"). Here, the only evidence presented by Plaintiffs were two photographs attached to the reply. ECF No. 36 Ex. A. However, these photographs were not accompanied by a declaration identifying them as purporting to be photographs of the Nile Landslide area on the identified dates. *See* Fed. R. Evid. 901(a) ("To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.").

Authenticated facts were presented by Defendants through the declarations of Defendant John Brumley, ECF Nos. 34 & 35, and Thomas Badger, ECF No. 32. Plaintiffs ask the Court to strike these declarations because they include unsupported, false, and misleading information. Plaintiffs, however, did not support their strike request with declarations identifying the deficiencies in Defendants' declarations. Given Defendant Brumley and Mr. Badger's education and

work experience, the Court denies Plaintiffs' request to strike the filed declarations.

Notwithstanding Plaintiffs' failure to present authenticated evidence, the Court considers the factual assertions in the pleadings and memoranda that appear to be undisputed when preparing this factual statement.

**2. Factual Statement**

In 1994, Ernest, Robins, and Kory Simmons began operating Simmons, a surface mining operation in the Naches, Washington area after obtaining a surface mining permit and an approved reclamation plan from DNR. ECF No. 35 Ex. 2 at 28-45. Simmons mined talus and other material pursuant to this 1994 permit and plan.

In 2005, DNR issued Simmons an Order to Rectify Deficiencies ("2005 DNR Order") under RCW 78.44.190, finding that Simmons had disturbed three acres outside of the permitted area, permit boundaries were not adequately marked, the reclamation plan was more than ten years old, and there were observed tension and landslide scarps. ECF No. 34 Ex. 1. The 2005 DNR Order required Simmons to submit a modified and expanded surface mine reclamation plan and permit application. Simmons did not appeal the Order, and made several attempts between 2005 and 2008 to submit an application. These applications were either incomplete or inadequate; DNR therefore never approved a new permit or reclamation plan for Simmons. DNR, however, did not require Simmons to cease mining under the 1994 permit and plan.

On October 11, 2009, a landslide (the "Niles Landslide"), which may have originated from State land adjacent to Simmons, buried approximately

forty acres of the Simmons' mine, as well as buried a state highway with about 100 feet of dirt and rock, damaged several residential homes, and rerouted the Naches River, in total affecting approximately 110 acres. After the Niles Landslide, the Washington Department of Transportation (DOT) approached Simmons about providing material to use in the reconstruction of the highway.[1] Simmons began doing some mining activity.

DNR learned of the mining, visited Simmons, determined that surface mining was not appropriate under the 1994 permit and plan given the change in topography and landscape, and on November 4, 2009, issued an Emergency Order to Suspend Surface Mining ("DNR Emergency Order") to Simmons. In December 2009, Simmons administratively appealed the DNR Emergency Order; this appeal was referred to the Washington State Office of Administrative Hearings. Summary judgment motions were filed, and a hearing was set for July 20, 2010. Days before the summary-judgment hearing, the parties entered into an interim settlement agreement, staying the administrative appeal. Under the settlement agreement, Simmons was to complete a subsurface study of the mine site. Simmons has not yet conducted a subsurface study, and so on February 23, 2012, DNR

---

[1] In time, DOT rerouted traffic and relocated the highway around the toe of the landslide, using materials obtained from a Simmons' competitor. Before and during the highway relocation phase, DOT installed thirty-four geotechnical borings to assess the impact of the highway reconstruction on slope stability. The bores were not used to evaluate the impact of resumed mining at Simmons.

asked the administrative hearing board to dismiss the appeal because Simmons has not complied with the settlement agreement.

On April 9, 2012, Plaintiffs filed the instant Complaint, which asserts the following thirteen causes of action: 1) a 42 U.S.C. § 1983 claim that Defendants issued the DNR Emergency Order without the authority to do so, 2) a § 1983 claim for violation of the Fifth and Fourteenth Amendments because Defendants took Plaintiffs' property without due process of law, 3) a § 1983 claim for depriving Plaintiffs of their ability to mine and make a profit without due process of law, 4) a violation of Washington Constitution Article 1, § 16 by inversely condemning Plaintiffs' property because the State's land buried Plaintiffs' property, 5) a violation of Washington Constitution Article 1, § 16 by inversely condemning Plaintiffs' property through a regulatory taking, 6) a § 1983 claim based on a violation of the Fifth and Fourteenth Amendments because the State's land buried Plaintiffs' property, depriving Plaintiffs of its economically viable use without just compensation, 7) a violation of 15 U.S.C. § 1 by conspiring to prohibit Plaintiffs to mine, 8) violation of 15 U.S.C. § 14 by agreeing not to use Plaintiffs' product, 9) conspiracy to restrain trade in violation of RCW 19.86.030, 10) an agreement not to use Plaintiffs' product in violation of RCW 19.86.030, 11) seeking under RCW 7.16.040 a writ of certiorari that the DNR Emergency Order is void, 12) seeking under RCW 7.16.300 a writ of prohibition to prevent DNR from enforcing the DNR Emergency Order, and 13) seeking under RCW 7.16.300 a writ of prohibition to prevent DNR from enforcing the settlement agreement. On May 4, 2012, the State Defendants answered. ECF No. 10.

Now before the Court is the Plaintiffs' Motion for Preliminary Injunction. ECF No. 9.

**B. Authority and Analysis**

Plaintiffs seek a preliminary injunction barring DNR and the named employees from enforcing the DNR Emergency Order because the Washington Surface Mining Act, RCW 78.44 *et seq.*, does not provide DNR with the authority to issue a cease-mining order based on changed topography due to a natural occurrence, and Defendants continued steps to enforce the DNR Emergency Order is putting Simmons at risk of ceasing operations. Defendants present a two-pronged challenge to Plaintiffs' preliminary-injunction motion: 1) jurisdictional arguments, and 2) merits-based arguments. Defendants contend this Court lacks the jurisdiction to hear Plaintiffs' injunction request because 1) the Eleventh Amendment bars this federal lawsuit against the state of Washington, 2) the Court should abstain from exercising jurisdiction consistent with the *Younger* doctrine, and 3) Plaintiffs' Fifth Amendment claim is not yet ripe. The Court begins its analysis with the jurisdiction-based arguments.

**1. Eleventh Amendment**

The Eleventh Amendment generally prohibits a federal lawsuit from being brought against a State. U.S. Const. Amdt. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."); *see Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267-69 (1997) (recognizing that a State's protection from suit extends to lawsuits brought by a citizen of that State). There are three exceptions

to the Eleventh Amendment immunity bar: 1) where the State has consented to suit in federal court, 2) where applying *Ex Parte Young*, 209 U.S. 123 (1908), and its progeny is appropriate, and 3) where Congress has abrogated the State's immunity. *Nelson v. Miller*, 170 F.3d 641, 646 (6th Cir. 1999). The only exception at issue here is whether *Ex Parte Young* applies.

Under the *Ex Parte Young* exception, a plaintiff may bring a lawsuit for prospective relief against a state official in his official capacity to correct an ongoing violation of the U.S. Constitution or federal law. 209 U.S. at 159-60. Therefore, to determine whether applying the *Ex Parte Young* exception is appropriate, the Court must assess whether Plaintiffs are seeking 1) prospective relief 2) against a state official in his official capacity 3) that seeks to correct an ongoing U.S. Constitution or federal law violation.

Plaintiffs contend that at this time they are only seeking prospective relief: an order that DNR and its officials may not enforce the DNR Emergency Order. However, when considering whether this Court has jurisdiction over a lawsuit, the Court must consider not only the relief requested by Plaintiffs through their preliminary-injunction motion but also what relief they seek in their Complaint. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984) ("A federal court must examine each claim in a case to see if the court's jurisdiction over that claim is barred by the Eleventh Amendment."). In their Complaint, Plaintiffs seek not only prospective relief but also compensatory damages for the alleged taking of their property. The State of Washington "is the real, substantial party in interest." *Ford Motor*

*Co. v. Dep't of Treas.*, 323 U.S. 459, 464 (1945); *see Ass'n of N.W. Steelheaders v. U.S. Army Corps of Eng'rs*, 485 F.2d 67 69 (9th Cir. 1973) (quoting *Dugan v. Rank*, 372 U.S. 609, 620 (1963) ("The general rule is that a suit is against the sovereign if 'the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration,' or if the effect of the judgment would be 'to restrain the Government from acting, or to compel it to act.'" (internal citation omitted)). Accordingly, application of the *Ex Parte Young* exception to the Eleventh Amendment immunity bar is not appropriate here.

Further, as the Complaint is styled, it appears Plaintiffs' request for prospective relief is based on a violation of state law rather than an ongoing U.S. Constitution or federal law violation. No federal law is alleged to be violated. Rather Plaintiffs bring this lawsuit under § 1983, which is the legal vehicle used to assert a violation of a federal constitutional right. *See Henderson v. City of Simi Valley*, 305 F.3d 1052, 1056 (9th Cir. 2002) ("Section 1983 does not create any substantive rights; rather it is the vehicle whereby plaintiffs can challenge actions by governmental officials."). Plaintiffs allege that their Fifth and Fourteenth Amendment rights were infringed because their property, the Simmons' mine and money derived therefrom, has been taken through Defendants' enforcement of the invalid DNR Emergency Order. Plaintiffs do not allege that this DNR Emergency Order fails to comply with a federal statute or constitutional principle but rather that DNR did not have the authority to issue it under Washington's Surface Mining Act. Whether DNR has the authority to issue the DNR Emergency Order under Washington law is a question for the Washington courts to decide.

For the above-given reasons, it is not appropriate here to apply the *Ex Parte Young* exception. Accordingly, the Court denies Plaintiffs' Motion for Preliminary Injunction because the Court lacks the jurisdiction to hear it. Consistent with this ruling, the Court understands it does not have jurisdiction to hear this lawsuit. The Court grants the parties leave to file briefing, limited to five pages, identifying whether dismissal of the lawsuit is required.

For completeness of the record, the Court briefly addresses the other arguments raised by the parties.

**2. *Younger* Abstention Doctrine**

In *Younger v. Harris*, the Supreme Court held that federal courts are not to interfere with ongoing state proceedings in order to ensure equity and comity between the federal and state courts and to avoid duplication. 401 U.S. 37 (1971). Although *Younger* arose in the criminal context, case law has extended it to the civil context as well. *Middlesex Cnty. Ethics Comm. v. Garden St. Bar Ass'n*, 457 U.S. 423, 437 (1982). Accordingly, if a state administrative or judicial proceeding is pending in which important state interests are implicated and it provides the plaintiff with an adequate opportunity to raise federal constitutional issues, the federal court should abstain from hearing the federal constitutional issues that could be raised in the state proceeding. *Id.* at 436; *Agriesti v. MGM Grand Hotels, Inc.*, 53 F.3d 1000, 1001 (9th Cir. 1995).

Here, Plaintiffs initiated a state administrative proceeding by appealing the DNR Emergency Order. Although that proceeding was stayed pending the settlement agreement, it was reopened this winter when DNR asked the administrative hearing board to dismiss the appeal given

Plaintiffs' purported failure to abide by the settlement agreement. This state administrative proceeding is in essence a state enforcement proceeding of the DNR Emergency Order. Accordingly, this administrative proceeding is not, as Plaintiffs suggest, reviewing legislative or executive action. Instead it is an action that "command[s] the respect due court proceedings." *Ohio v. Civil Rights Comm'n v. Dayton Christian Schs., Inc.*, 477 U.S. 619, 627 (1986) (quoting *Gibson v. Berryhill*, 411 U.S. 564, 576-66 (1973)).

Further, the administrative proceeding, and any subsequent state court proceeding arising from an appeal, provide Plaintiffs with an adequate opportunity to raise federal constitutional issues. *See Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc.*, 477 U.S. 619 (1986) (finding it sufficient under *Middlesex* "that constitutional claims may be raised in state-court judicial review of the administrative proceeding").

Therefore, the Court determines that abstaining under *Younger* is appropriate at this time. Typically, a federal civil lawsuit requesting damages and involving *Younger* abstention issues is stayed pending the state administrative and judicial proceedings. *Gilbertson v. Albright*, 381 F.3d 965, 981-82. Because this lawsuit may be dismissed entirely due to Eleventh Amendment immunity, the parties are also given leave to address whether this lawsuit should be dismissed or stayed in their to-be-filed briefs.

**3. Ripeness**

Defendants argue that Plaintiffs' regulatory takings and § 1983 claims are not ripe because the State has yet to make a final

determination regarding what mining may occur at Simmons. Plaintiffs maintain that their request for a preliminary injunction is ripe because it is based simply on the argument that DNR and the named DNR employees lack the authority to issue and enforce the DNR Emergency Order.

Plaintiffs' damages claims are not ripe given that DNR has not made a final decision as they are waiting for Plaintiffs to submit a slope stability analysis. *See Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City,* 473 U.S. 172, 190 (1985) ("[A] claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue."). Nonetheless, when limiting the Court's ripeness analysis to Plaintiffs' claim that Defendants lack the authority to issue and enforce the DNR Emergency Order, the Court finds this claim is ripe. Yet, as indicated above, the Court cannot hear this preliminary-injunction motion because the Eleventh Amendment bars jurisdiction and *Younger* absention is appropriate.

**4. Merits**

A court may only grant preliminary injunctive relief when the plaintiff can "establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). By failing to submit any authenticated evidence, Plaintiffs failed to establish any of

the *Winter* factors. *See also K-2 Ski Co. v. Head Ski Co.*, 467 F.2d 1087, 1088-89 (9th Cir. 1972) (If the record before a court "consist[s] largely of general assertions which are substantially controverted by counter-affidavits, a court should not grant [a preliminary injunction] unless the moving party makes a further showing sufficient to demonstrate that he will probably succeed on the merits."). In regard to the likelihood of success on the merits, the Court finds Plaintiffs are not likely to prevail on their argument that DNR does not have the authority to issue and enforce the DNR Emergency Order under RCW 78.44.200 due to changed topography and landscape resulting from a natural occurrence. Also, the public interest weighs against the requested preliminary injunction because the risk of initiating a new landslide and placing the lives of people, animals, and vegetation in harm's way is too great when balanced against Plaintiffs' interest to produce a profit without conducting the requested stability analysis. *See Weinberger v. Romero-Barcelo*, 456 U.S. 305, 213 (1982) ("In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction.").

**C. Conclusion**

In summary, the Court finds the Eleventh Amendment bars this Court from hearing Plaintiff's Motion for Preliminary Injunction, absention under *Younger* is appropriate, and Plaintiffs failed to establish that a preliminary injunction is warranted. Accordingly, **IT IS HEREBY ORDERED:**

1. Plaintiffs' Motion for Preliminary Injunction, **ECF No. 9**, is **DENIED.**

2. Within **seven days of this Order**, the parties shall file a brief (limited to five pages) addressing whether, given the Court's above rulings, the Court must dismiss or stay this lawsuit.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order and provide copies to counsel.

**DATED** this 19th day of June 2012.

s/Edward F. Sbea
EDWARD F. SHEA
Senior United States District Judge

Q:\Civil\2012\3046.PI.deny.lc1.wpd